UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 19-21712-CIV-MARTINEZ-OTAZO-REYES

CARLOS YELA,

    Plaintiff,

vs.

TRENDING MEDIA GROUP, INC.,
et al.

    Defendants.
_____/

## OMNIBUS ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendants Trending Media Group, Inc. ("Trending") and Jolie Plastic Surgery, Inc.'s ("Jolie") respective Amended Motions for Summary Judgment. [ECF No. 52, 53]. The Court has carefully considered the Motions, Plaintiff's Responses in Opposition thereto, and the pertinent portions of the record. Being duly advised in the premises, the Court denies both Motions.

### I.    BACKGROUND

In March of 2019, Plaintiff brought a State Court action in Miami-Dade County, Florida. Plaintiff alleged that he was jointly employed by Defendants Trending and Jolie (collectively "Defendants") and that Defendants violated his rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, *et. seq*. Specifically, Plaintiff alleges that Defendants failed to pay for overtime hours worked and deducted thirty-minute lunch breaks from his pay without his consent. In May of 2019, Defendants removed the action to federal court.

1

On January 21, 2020, Defendants filed a joint Amended Motion to Dismiss and respective Motions for Summary Judgment. [ECF Nos. 51–53]. On September 10, 2020, the Court denied Defendants' Amended Motion to Dismiss, finding that the arguments raised therein were premature and should be determined at the summary judgment stage. [ECF No. 90]. The relevant facts are as follows.[1]

Trending is a company engaged in digital marketing and advertising. [ECF No. 61-1 at ¶ 11]. Jolie is a plastic surgery clinic. [ECF No. 53]. Trending employed Plaintiff as an Advertising Manager whose duties included marketing and advertising, content review, and producing, directing, and editing television commercials. [ECF No. 61-1 at ¶ 20]. According to Plaintiff, Trending is the only company Jolie uses for marketing and advertising. [*Id.* at ¶ 11]. Plaintiff contends that Ismael Labrador ("Labrador") is the owner of both Trending and Jolie, and that Labrador was Plaintiff's direct supervisor. [*Id.* at ¶ 6–8].

According to Plaintiff, these advertising and marketing projects targeted both in- and out-of-state markets and indeed garnered clientele from outside the state of Florida. [*Id.* at ¶ 18–1]. Plaintiff contends that because plastic surgery prices in South Florida are some of the lowest in the nation, patients travel from out-of-state, including New York, Pennsylvania, and Washington, D.C., to the Miami area for plastic surgery procedures. [*Id.* at ¶ 18]. Thus, it is Plaintiff's contention that although he performed his work from Miami, his work involved engaging in the

---

[1] It should be noted that both Defendants failed to comply with Local Rule 56.1. Neither Defendant filed a proper Statement of Undisputed Material Facts. *See* S.D. Fla. L.R. 56.1(a), (d). Rather, Defendants attached numerous exhibits to their respective motions—enlarging them to about eighty-six and forty-five pages respectively. This is the exact type of filing the Local Rules seek to avoid. Though the Court could, within its discretion, choose to deem Plaintiff's Statement of Facts admitted due to Defendants' failure, it need not do so. After a review of the record in its entirety—including Defendants' improperly filed exhibits—Defendants' Motions for Summary Judgment nonetheless fail. The foregoing facts are viewed in the light most favorable to Plaintiff as the non-movant.

instrumentalities of interstate commerce, *i.e.*, the internet, to generate sales from both in- and out-of-state clients. [*Id.* at ¶ 21–22]. Plaintiff also asserts that both Trending and Jolie operate out of the same building in which he worked. [*Id.* at ¶ 23].

Plaintiff contends that throughout his employment he worked in excess of forty hours without overtime compensation and was mandated to take thirty-minute lunch breaks. [*Id.* at ¶ 28–30]. Plaintiff states that though he regularly worked through these lunch breaks, the allocated thirty-minutes were nevertheless deducted from his paychecks. [*Id.* at ¶ 31].

In support of their respective motions, Defendants raise several objections to Plaintiff's claims and version of the facts. First, Trending contends that Plaintiff cannot establish he is subject to individual coverage under the FLSA or that Trending is subject to enterprise coverage. [ECF No. 52 at 7]. Jolie contends that although it is an entity subject to enterprise coverage under the FLSA, Plaintiff was not its employee. [ECF No. 53 at 5]. Plaintiff counters that he does qualify for individual coverage in relation to his employment with Trending. [ECF No. 60 at 10–12]. Further, Plaintiff argues that Trending and Jolie were joint employers, and that Trending and Jolie are a joint enterprise such that each defendant is jointly and severally liable to Plaintiff for any FLSA violations. [*Id.* at 12–17].

## II.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On reviewing a motion for summary judgment, the Court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The Court must resolve all reasonable inferences in favor of the nonmoving

party and construe the evidence in its favor. *S.E.C. v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Carlson v. FedEx Ground Package Sys.' Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).

The moving party bears the initial burden of demonstrating to the Court the basis for its motion and identifying the portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

The Court must resolve the following issues: (1) whether Plaintiff qualifies for individual coverage as a matter of law; (2) whether Trending and Jolie are a joint enterprise such that Trending would be liable pursuant to the "enterprise coverage" doctrine; and (3) whether Plaintiff was jointly employed by Trending and Jolie such that each would be jointly and severally liable under the FLSA.

### i. Individual Coverage

To establish a claim under the FLSA, a plaintiff must first establish FLSA coverage. *Thorne v. All Restoration Servs.', Inc.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006). The FLSA

provides that an individual must be compensated for any overtime worked if he can establish either individual or enterprise coverage. *Id.* For individual coverage to apply, the plaintiff bears the burden of establishing that he was engaged in interstate commerce or engaged in the production of goods for interstate commerce. 29 U.S.C. § 207(a)(1); *Thorne*, 448 F.3d at 1266; *Jiminez v. Southern Parking, Inc.*, No. 07-23156, 2008 WL 4279618, at *6 (S.D. Fla. Sept. 16, 2008). Specifically, a plaintiff must show that "he directly participat[ed] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce . . . or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraphs, mails, or travel." *Thorne*, 448 F.3d at 1266. "Engaged in commerce," however, is to be given a broad, liberal construction in order to effectuate the FLSA's dual-purpose. *Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090, 1094 (5th Cir. 1973).

Applying the above standard, the Court finds that at the very least, a genuine issue of material fact exists as to whether Plaintiff was "engaged in commerce" to the extent that individual coverage applies. Trending contends that its business operates locally and does not engage in the production of any goods. [ECF No. 52 at 7]. In support of this contention, Trending points to the affidavit of Labrador, who states in his capacity as Trending's corporate representative that Trending does not engage in interstate commerce. [ECF No. 52, Ex. B at ¶ 1–3]. Plaintiff's declaration, however, states that throughout the course of his employment with Trending he engaged in producing advertisements, marketing materials, and television commercials that were targeted to in- and out-of-state consumers. [ECF No. 61-1 at ¶ 18–21]. Plaintiff also attaches

portions of Jolie's website[2] targeting out-of-state consumers as evidenced by phrases such as: "OUT OF TOWN PATIENTS," "TRAVEL ARRANGEMENTS," and "Make a Vacation Out of Your Trip!" [ECF No. 61-8, Ex. H].

Drawing all reasonable inferences in favor of the non-movant, as the Court must, a genuine issue of material fact exists regarding whether Plaintiff qualifies for individual coverage with respect to his employment relationship with Trending. Plaintiff has produced sufficient evidence to suggest that his work engaged the instrumentalities of interstate commerce. [*See id.*]. Namely, the marketing and advertisements Plaintiff created for Defendants were disseminated to out-of-state consumers via the internet, an instrumentality of interstate commerce.

"Courts have found that regularly soliciting out-of-state business or regularly communicating with out-of-state customers is sufficient to show individual coverage." *Westley v. Love Pet Grooming Salon, Inc.*, No. 8:18-cv-172-T-24 TGW, 2019 WL 249716, at *5–6 (M.D. Fla. Jan. 17, 2019); *see also Lopez v. Pereyra*, 2010 WL 335638, at *6 (S.D. Fla. Jan. 29, 2010) (pointing out that the plaintiff made telephone calls on a weekly basis to customer-patients located outside of Florida); *Lopez v. Marlborough House, Inc.*, 2013 WL 5520061, at *2 (S.D. Fla. Oct. 3, 2013) (pointing out that the plaintiff regularly used a phone to communicate with out-of-state customer-tenants that had a condominium unit with maintenance issues in Florida).

Because Defendants failed to rebut Plaintiff's contentions that Defendants' advertisements, as well as solicitation of and communications with out-of-state customers, constitute the regular use of interstate commerce, summary judgment is inappropriate.[3]

---

[2] These portions of Defendant Jolie's website—and not Trending's—are in fact relevant because, as discussed below, there remains genuine disputes of material fact as to whether the two Defendants are a joint enterprise or joint employers of Plaintiff.

[3] The Court does not decide whether such activities indeed establish the regular use of interstate commerce, but rather finds that Defendants, as the moving parties, have not established otherwise.

### ii. Enterprise Coverage

Plaintiff also contends that he is entitled to enterprise coverage as a joint employee of Trending and Jolie. Trending argues that it is not subject to enterprise coverage because its gross annual revenue falls below the requisite $500,000 statutory amount. *See* 29 U.S.C. § 203 (s)(1)(A)(ii). Jolie, on the other hand, concedes that it is an entity subject to enterprise coverage under the FLSA but argues that it never employed Plaintiff. [ECF No. 53 at 5]. Plaintiff does not dispute the fact that Trending's gross annual income falls below the requisite statutory amount. Plaintiff does contend, however, that Trending and Jolie are a joint enterprise and are thus jointly and severally liable for any FLSA violations. [ECF No. 60 at 12–15].

A business is subject to enterprise coverage under the FLSA if the business is an enterprise engaged in commerce or the production of goods for commerce. 29 U.S.C. § 207(a)(1); *Hurtado v. Raly Dev., Inc.*, Case No. 11-24476, 2012 WL 3687488, at *7 (S.D. Fla. Aug. 27, 2012). Such an enterprise:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) [.]

29 U.S.C. § 203(s)(1); *Hurtado*, WL 3687488, at *7. As is alleged here, an enterprise can be comprised of more than one entity under the joint enterprise doctrine. *Hurtado*, 2012 WL 3687488, at *7.

In the Eleventh Circuit, three elements must be met to establish a joint enterprise as defined by the FLSA: "(1) related activities; (2) unified or common control; and (3) a common business purpose." *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984) (citing 29

U.S.C. § 203(r)); *Cornell v. CF Standard, L.L.C.*, 410 F. App'x 265, 267 (11th Cir. 2011). It should be noted that Congress included enterprise coverage to expand FLSA protections and "to lump related activities together so that the annual dollar volume test for coverage would be satisfied." *Patel v. Wargo*, 803 F.2d 632, 636 (11th Cir. 1986).

Because it is undisputed that Trending is not an enterprise and Jolie is, the Court need only determine whether Trending and Jolie are ***not*** a joint enterprise under the FLSA as a matter of law and as Defendants contend. This determination requires that the Court "look beyond formalistic corporate separation to the actual pragmatic control, whether unified or, instead, separate as to each unit." *Cornell*, 410 F. App'x at 267 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir. 1984)). Thus, the Court must examine each element required to establish enterprise coverage and apply the facts to the relevant legal standards.

### *a. Related Activities*

"Activities are related when they are the 'same or similar' or when they are 'auxiliary and service activities.'" *Hurtado*, 2012 WL 3687488, at *9; (quoting *Donovan*, 723 F.2d at 1551). This District recognizes "auxiliary and service activities" as activities involving "operational interdependence in fact." *Jiminez*, 2008 WL 4279618, at *9; *Hurtado*, 2012 WL 3687488, at *9. Operational interdependence is found where "corporations share centralized office functions (such as book keeping, auditing, billing, purchasing advertising, centralized warehousing of materials) or regularly share employees." *Id.* (citing *Brennan v. Veteran's Cleaning Serv., Inc.*, 482 F.2d 1362, 1366–67 (5th Cir. 1973)).

Here, Plaintiff argues that the activities of Trending and Jolie are related because Trending was created to market and advertise for Jolie; Trending and Jolie operate their businesses from the same location; and both are controlled by Plaintiff's supervisor, Mr. Labrador. [ECF No. 60 at 13].

Plaintiff further contends that he witnessed Trending employees interacting and working with Jolie employees in the same office. [*Id.*]. Neither Trending nor Jolie, however, point to any evidence in the record, beyond conclusory assertions of speculation, that contradicts Plaintiff's assertions. Accordingly, Defendants have not met their burden.

### *b. Unified Operation or Common Control*

Plaintiff must also establish that Trending and Jolie constitute a unified operation or share common control. *See Donovan*, 723 F.2d at 1552. In *Donovan*, the Eleventh Circuit noted that a controlling ownership interest establishes the power of control. *Id*. "The right to control that is inherent in ownership is determinative of the 'common control' test regardless of the extent to which the right to control is exercised." *Id*.

In support of his theory, Plaintiff contends that his supervisor at all relevant times was Labrador, that Labrador is the owner of both Trending and Jolie, and that Labrador often directed Plaintiff to work on projects for Jolie. [ECF No. 60 at 14]. Jolie merely argues that Plaintiff's assertions are speculative and a "sorrowful attempt" to prove enterprise. [ECF No. 65 at 3]. Jolie, however, points to no evidence in the record to rebut Plaintiff's assertions. At the very least, a genuine issue of material fact exists as to whether Labrador had an ownership interest in Jolie and whether he exerted common control over both Defendants. Accordingly, resolution of this issue requires further fact-finding and cannot be resolved at the summary judgment stage.

### *c. Common Business Purpose*

Finally, Plaintiff must establish that Trending and Jolie have a common business purpose. *See Donovan*, 723 F.2d at 1553. Courts have noted that the common business purpose analysis is similar to the related activities analysis. *Donovan*, 723 F.2d at 1553; *Brennan*, 482 F.2d at 1367.

While many considerations are relevant, there must be more than a common goal of making a profit. *Donovan*, 723 F.2d at 1553.

Plaintiff contends that Trending and Jolie have a common business purpose because Trending was specifically created to market and advertise for Jolie. [ECF No. 60 at 14]. Further, Plaintiff asserts that Labrador created Trending for the sole purpose of having his own marketing and advertising firm to advertise his plastic surgery outlets, including Jolie. [*Id.* at 14–15]. Jolie again, without pointing to any evidence otherwise, argues that Plaintiff's assertions are mere speculation. [ECF No. 65 at 3]. Neither Trending nor Jolie has met its burden of pointing the Court to the portions of the record that show an absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. As such, it would be improper for the Court to grant summary judgment in favor of Defendants regarding Plaintiff's joint enterprise theory.

### iii. Joint Employment

Plaintiff similarly contends that he had a joint employment relationship with Defendants. [*See* ECF No. 60 at 15–17; ECF No. 62 at 7–10]. Plaintiff's employment relationship with Trending is undisputed; Jolie, however, maintains that it never employed Plaintiff in any capacity. [ECF Nos. 64–65].

To determine whether Trending and Jolie can be considered joint employers, the Court turns to the factors listed by the Department of Labor in the Code of Federal Regulations. *See* 29 C.F.R. § 791.2. At the outset, it should be noted that the following factors are not exhaustive— "[a] determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon all the facts of the particular case." 29 C.F.R. § 791.2(a)(3)(i). The relevant factors provided are as follows:

> (i) There is an arrangement between them to share the employee's services;
> (ii) One employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or
> (iii) They share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. Such a determination depends on all of the facts and circumstances. Certain business relationships, for example, which have little to do with the employment of specific workers—such as sharing a vendor or being franchisees of the same franchisor—are alone insufficient to establish that two employers are sufficiently associated to be joint employers.

29 U.S.C. § 791.2(e)(2). In *Layton v. DHL Exp. (USA), Inc.*, the Eleventh Circuit expanded on these guidelines and provided an eight factor test for courts to consider when determining whether employers are joint employers. 686 F.3d 1172, 1175–77 (11th Cir. 2012). These factors include:

> (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payments of the workers; (5) preparation of payroll and payments of wages; (6) ownership of the facilities where the work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.

*Hankerson v. Fort Lauderdale Scrap, Inc.*, Case No. 15-60785, 2016 WL 7508242, at *3 (S.D. Fla. Sept. 8, 2016) (citing *Layton*, 686 F.3d at 1175–77).

In support of its position, Plaintiff cites the factors set out by the Fourth Circuit in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141–43 (4th Cir. 2017). Although this Court is bound by the factors set out in *Layton*, the *Salinas* factors are sufficiently similar. *Compare Layton*, 686 F.3d at 1175–77, *with Salinas*, 848 F.3d at 141–43.[4] In short, Plaintiff contends that factors (1), (3), and (6) support that, at the very least, a genuine issue of material fact exists as to whether Trending and Jolie were Plaintiff's joint employers. [*See* ECF No. 60 at 16–18].

---

[4] Although Plaintiff cites the *Salinas* factors, the Court will apply the corresponding *Layton* factors.

In support of factor (1), "the nature and degree of control of the workers," Plaintiff argues that Labrador was the owner of both Trending and Jolie. *See Layton*, 686 F.3d at 1175–77. Plaintiff further contends that Labrador often directed him to work on projects, as a Trending employee, for the benefit of Jolie. [ECF No. 60 at 17]. The only evidence Jolie offers to rebut Plaintiff's position is an affidavit of Jolie's corporate representative Estrella Roja, stating that Plaintiff was not an employee of Jolie. [ECF No. 53, Ex. B ¶ 5]. Jolie points to no evidence in the record to contradict Plaintiff's assertion that Labrador was the owner of both Trending and Jolie and that Labrador exerted a degree of control over Plaintiff's employment.

In support of factor (3), "the power to determine the pay rates or the methods of payments of the workers," Plaintiff points out a paycheck he received directly from Jolie for work he performed on behalf of Trending for the benefit of Jolie. *See Layton*, 686 F.3d at 1175–77; [ECF No. 61, Ex. K]. Although Jolie maintains that it never employed Plaintiff, it concedes that on at least two occasions, it made out checks directly to Plaintiff. [*See* ECF No. 53 at 4]. The Court finds that, in light of the allegations of joint control and identical ownership, the fact that Jolie made out checks to Plaintiff supports a reasonable inference that Jolie and Plaintiff were involved in an employment relationship.

Finally, Plaintiff contends that factor (6), "ownership of the facilities where the work occurred," is present because Labrador was the owner of both Trending and Jolie, and Plaintiff performed his work at the same location that Trending and Jolie both operated their businesses out of. *See Layton*, 686 F.3d at 1175–77; [ECF No. 60]. Again, Defendant relies solely on the affidavit of its corporate representative, which simply states that Plaintiff was not an employee. The Court cannot—and will not—make credibility determinations at this point of the proceedings.

With the benefit of the arguments of the parties and the record evidence, the Court finds that genuine issues of material fact exist regarding Defendants' status as Plaintiff's joint employers. Resolving all inferences in favor of the non-movant, as the Court must, the Court finds that the record reveals genuine issues of material fact. Accordingly, Defendants are not entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, and after careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendants' Motions for Summary Judgment, [ECF Nos. 52, 53], are **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of September 2020.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record